[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of the marriage of the parties, who were married on April 7, 1990. Issues concerning parenting arrangements for their two children, Carter, born March 7, 1992, and Clark, born October 26, 1998, were settled by a stipulated agreement at the commencement of trial, and that agreement was made the judgment of the court with respect to custody. CT Page 14089
The parties are both well educated professionals. The wife's career in the insurance industry has been more economically successful in recent years, but during the early years of the marriage both parties enjoyed comparable incomes. The parties have spent a significantly disproportionate portion of their assets litigating both custody and property issues.
One issue in contention is the proper distribution of the proceeds from the sale of the marital home during the pendente lite period.[1] The parties bought the house for $242,000.00 in 1993 at a time when they were making similar incomes. The wife contributed approximately $30,000.00 to the purchase by withdrawing funds from her 401K plan, while the husband contributed $19,000.00 he had received from an inheritance. The husband first claims that he should be entitled to credit for his portion of the down payment because it came from his own funds while the wife's came from marital assets. While the court may segregate inherited property from other purely marital property in fashioning an award, Jackson v.Jackson, 17 Conn. App. 431 (1989), the court is not required to do so.Karen v. Parciak-Karen, 40 Conn. App. 697, 704 (1996). In addition, when the house was purchased the wife had contributed to the 401K plan for six years prior to the marriage and for another three years during the marriage. While the amounts of the contributions during those periods were not proven, it is clear that some portion of the 401K money predated the marriage.
The husband next claims that he should receive credit for the fact that the proceeds of a $23,000.00 second mortgage placed on the house just a month before the wife commenced this action were used to pay the wife's debts, and did not benefit him. The parties' marriage existed in the midst of a tortured financial relationship. They agreed early on to share some household expenses but to otherwise maintain separate lives financially. They also agreed that if they bought the house, something of an extravagance in light of their income at the time, they would not incur future credit card debt.
After that agreement, the husband did not incur further credit card debt, but the wife incurred a substantial amount. The wife claims that her credit cards were used to provide for the family's living expenses, particularly during the period around 1995 when the husband was unemployed. Her testimony in this regard is not credible or convincing. While it is possible to infer that some of the charges were used for household purposes, there is insufficient evidence to determine the amount. Moreover, even if her testimony were to be sufficient, she did arrange for the repayment of her credit cards through a refinance which occurred shortly before she filed for divorce. The refinance yielded CT Page 14090 $22,154.00 after fees, and $19,354.00 was paid to others, leaving $3,645.74 in cash. By the time the house was sold, only $12,877.00 of the second mortgage debt remained. In 1998, the wife had credit card debt of approximately $36,000.00. She now has credit card debt of $4,300.00. The husband testified credibly that he would not have agreed to the refinance if he had known that this action was about to be filed.
The wife claims that she should receive a credit for mortgage payments that he did not pay during the period he was unemployed and for certain household expenses he did not pay as required under pendente lite orders. With respect to the first claim, it is not credible. If this action had not occurred, there is no reason to believe that such a claim would ever have been made. Moreover, the husband earned more and contributed more to the household while he was unemployed than the wife testified to.
It is true that the husband's 1995 income was only approximately $10.000.00[2] exclusive of unemployment compensation while the wife's was nearly $80,000.00. However, until the parties' separation, their incomes were comparable. In 1996, for example, the husband earned approximately $55,000.00 and the wife earned approximately $76,000.00, while in 1997 he earned about $64,000.00 and she earned about $88,000.00
The wife's dissatisfaction with the husband's earnings from the time of his unemployment until their separation was a principal reason that their relationship dissolved. She has wanted an affluent lifestyle and has been unwilling to defer it because of his smaller income. She has, however, been willing to borrow against the future to maintain it. Apart from the funds used for the purchase of the house, she has withdrawn approximately $22,000.00 from her retirement vehicles.[3]
The court may consider a deviation from the presumptive child support amount when there is a shared custody arrangement, because it is in the best interest of the child, or for other equitable reasons. Regulationsof Connecticut Agencies, Section 46b-215a-3(b)(6). Here, neither parent has been designated as the primary residential parent pursuant to the agreement of the parties. That fact is not dispositive, since the parties reached that compromise after the negotiation that led to their parenting agreement. The parties do not have a traditional visitation arrangement, however. See, Preamble to Child Support and Arrearage Guidelines, (h)(6).
Deviation from the guidelines is also permitted where the court must coordinate total family support. Regulations of Connecticut StateAgencies, Section 46b-215a-3(5). This case represents the unusual situation in which the party who is entitled to receive child support CT Page 14091 with or without a deviation is different from the party who will be awarded alimony. Accordingly, it is necessary to articulate the specifics of the court's findings about both child support and alimony.
In reaching the conclusion that the husband is entitled to alimony for a period of time, the court has considered the evidence and the statutory criteria set forth in Section 46b-82 of the General Statutes. The husband left his employment in the spring of this year to take a lesser paying job which he perceived would provide greater opportunities. The court does not find that his decision amounted to a willful effort to reduce his earnings to avoid a support obligation or to create a support need. The wife's gross earnings are $2,634.62 weekly.[4] The husband's are $1,037.00. Based upon all the relevant factors, the court will set alimony at $325.00 per week for a period of four years, the term of which will not be modifiable.
The wife's net earnings are $1,499.00 per week without considering alimony, while the husband's are $598.00. Thus, the presumptive child support amount is $500.00 per week. The husband's proportional share of that is $142.00. However, he would be entitled to a deviation in connection with the parenting arrangement. Apart from the fact that the parties do not have a traditional custody arrangement, the contentiousness of their relationship creates an atmosphere in which each will have to provide for the children's needs independently while the children are in their care. Accordingly, a deviation of forty percent from the husband's presumptive support amount is appropriate.
However, once alimony is ordered, the calculation of funds available to the parties for child support differs. When the wife's payment of alimony is calculated, her net weekly income is $1,238.00 while the husband's is $804.00. The presumptive amount of child support due from both parents is $490.00, and the husband's presumptive share is $192.00. With the forty percent deviation, the amount of child support due is $115.00 per week.
The court has considered the relevant statutory criteria and case law, has evaluated the demeanor and credibility of the parties, and has reviewed the evidence in fashioning its orders. The following orders will enter.
1. The marriage of the parties, having broken down irretrievably, is hereby dissolved.
2. The stipulation of the parties regarding parenting responsibility has been approved and ordered and will be part of the judgment of the court.
3. The attorney for the minor child shall be paid $13,388.84 from the CT Page 14092 proceeds held in escrow since the sale of the house, representing his fee through trial. The wife shall pay 65% and the husband shall pay 35%.
4. Any outstanding and unreimbursed fees due Dr. Anne Phillips shall be paid from the proceeds held in escrow since the sale of the house. The wife shall pay 60% and the husband shall pay 40%, but the payment distribution shall give the wife credit for the $3,000.00 she previously paid.
5. The husband shall pay child support in the amount of $115.00 per week until the youngest child reaches the age of eighteen or graduates from high school, whichever is later, but not beyond the child's reaching nineteen. The husband shall pay forty percent of day care expenses and shall pay unreimbursed medical bills for the children in accordance with the child support guidelines.
6. The wife shall be entitled to claim both children as deductions for federal and state income tax purposes each year.
7. The wife shall pay the husband alimony of $325.00 per week for four years. Alimony shall not be modifiable as to term. Alimony shall terminate on the husband's death or remarriage, and may be modifiable upon his cohabitation.
8. So long as there is an obligation to pay alimony or child support, each party shall give the other a copy of his or her federal and state income tax returns including W-2's on or before April 25 of every year.
9. During any period when the children are entitled to support from either party, the wife shall name the children as irrevocable beneficiaries to the extent of $150,000.00 of any life insurance policy she obtains either through her employment or personally. During any such period, the husband shall name the children as irrevocable beneficiaries on his present life insurance policy.[5]
10. The funds held in escrow from the sale of the house shall be divided as follows. The husband shall receive the first $14,533.00.[6]
The remainder shall be divided equally between the parties, subject to the distribution requirements set forth with respect to the attorney for the minor children and Dr. Phillips.
11. The wife shall be entitled to retain the $5,000.00 she used toward her house.
12. Each party will be responsible for the debts on his or her respective financial affidavits, and shall hold the other harmless and CT Page 14093 indemnify the other on account of said debts.
13. The husband shall have as his personal property the armoire, the Louis Armstrong brass, the father and son sculpture, and the leather ottoman.
14. The husband shall maintain medical insurance for the benefit of the minor children as available through his employment. The provisions of Section 46b-84 shall apply. If the husband has no medical insurance for the children available through his employment, the wife shall maintain such medical insurance for the children as is available through her employment.
15. Joint utility bills from the prior marital residence that are still outstanding shall be paid as ordered pendente lite.
16. The parties shall each be liable for one half of the 1995 income tax liability, subject to credits for amounts actually paid by each.
17. The plaintiff shall transfer to the defendant by Qualified Domestic Relations Order one half of her 401K.
18. Neither party shall receive attorney's fees.
Judgment will enter accordingly.
BY THE COURT,
GRUENDEL, J.